THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAIA KORMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF CHICAGO, a municipal corporation, Police Officer FELIPE DE LA GARZA, Police Officer NICOLE RODAK, Police Officer AGUSTIN CERVANTES, Police Officer ROBERT S. KUBON, Police Officer PAUL M. SADOSKI, | ) ) ) ) ) ) ) | No. 20 CV 1986 |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES Plaintiff, MAIA KORMAN, by and through her attorneys, Law Office of Jordan Marsh, Complaining of Defendants, CITY OF CHICAGO, and Chicago Police Officers FELIPE DE LA GARZA, NICOLE RODAK, AGUSTIN CERVANTES, ROBERT S. KUBON, and PAUL M. SADOSKI, and pleads as follows:

## JURSDICTION AND VENUE

1. This action arises under the Constitution of the United States, particularly the Fourth and Fourteenth Amendments to the Constitution of the United States, under the laws of the United States, particularly the Civil Rights Act, Title 42 of the United States Code, Sections 1983 and 1988, and under the laws of the State of Illinois.

1

2. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

3. Venue is proper in the United States District Court for the Northern District of Illinois under Title 28 of the United States Code, Section 1391(b)(2), as the events complained of occurred within this district.

**PARTIES**

4. At all times relevant herein, Plaintiff MAIA KORMAN (hereinafter "Maia") was a resident of the City of Chicago, Illinois, County of Cook, State of Illinois, and a citizen of the State of Illinois.

5. DEFENDANT FELIPE DE LA GARZA (hereinafter "Defendant De La Garza") was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

6. DEFENDANT NICOLE RODAK (hereinafter "Defendant Rodak") was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of her agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

7. DEFENDANT AGUSTIN CERVANTES (hereinafter "Defendant Cervantes") was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY

OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

8. DEFENDANT ROBERT KUBON (hereinafter "Defendant Kubon") was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

9. DEFENDANT PAUL M. SADOSKI (hereinafter "Defendant Sadoski") was at all times relevant, a sworn police officer employed by Defendant CITY OF CHICAGO, and was acting within the scope of his agency, service and/or employment with the CITY OF CHICAGO, and was acting under color of the statutes, ordinances, regulations, customs, and usages of the State of Illinois.

10. Defendant CITY OF CHICAGO is a municipal corporation organized, existing and doing business under the laws of the State of Illinois, and at all times relevant provided police services in the CITY OF CHICAGO through the Chicago Police Department.

11. At all times relevant, including on or about August 20, 2018, the Defendant, CITY OF CHICAGO, employed a force of police officers who served through the Chicago Police Department and who were assigned to work within various geographical areas within the CITY OF CHICAGO.

**FACTUAL ALLEGATIONS**

12. On August 20, 2018, Defendants De La Garza, Rodak, Cervantes, Kubon, and Sadoski (collectively "Defendant Officers") arrested Maia while she was in the middle of an acute psychiatric episode caused by a mental illness.

3

13. Maia had been wandering around the city of Chicago for several days prior to her arrest. She ended up at Wright College, on Chicago's north side.

14. At Wright College, Maia allegedly pulled a fire alarm and struck a security guard, who called the police.

15. When the Defendant Officers arrived, Maia was behaving in an erratic and confused manner. She was displaying classic and obvious signs of psychosis, and was clearly in need of mental health treatment.

16. While Maia was in police custody at Wright College, the Defendant Officers allowed the alleged victim – on information and belief, a current or retired Chicago police officer – to question and argue with Maia. At one point, in the presence of Defendant Officers, the alleged victim called Maia "nuts". At another point – also in the presence of the Defendant Officers – the alleged victim made a gesture with his finger circling his ear to convey that Maia was crazy.

17. While recounting the events that led the police to be called, the alleged victim stated that "I said [to Maia], 'You gotta leave the building, the alarm's going off, you gotta evacuate the building.' I said it maybe five, six times, right to her face. And she's lookin' at me like I'm a fuckin' idiot."

18. The alleged victim informed the Defendant Officers that when the fire alarm went off, he told Maia that she needed to leave, but she did not appear to understand what he was saying. He stated, "I told her 'You gotta leave'…I told her ten times. I said 'You gotta leave, you gotta leave. I thought she was deaf."

19. While at Wright College, one or more Defendant Officers viewed surveillance footage of Maia in which she was walking through the halls of the school wearing a school banner over her head and down her back like it was a cape or a super hero costume.

20. At one point, when asked if she had identification, Maia claimed to be a war veteran who was there to pick up her son, and also claimed to work at Wright College. At the time of her arrest, Maia was wearing an oversized sweater and basketball shorts.

21. When Maia questioned whether the alleged victim – who was wearing a shirt with "SECURITY" and "Public Safety" emblazoned on the front – worked at Wright College, the alleged victim stated, "What are you, nuts? Are you nuts?"

22. When asked by an officer where her identification was located, Maia initially stated it was sewn in her arm, before finally admitting that she had no identification.

23. While the officers waited for a transport car, officers and/or Wright College mockingly asked Maia who her boss was at the school. She responded with the name of a president. One of the school's public safety officers informed the arresting officers that was not the college president's name. When Maia asked who the president was, one or more of the Defendant officers or public safety officers stated mockingly, "You tell us, you work for him."

24. The Defendant officers, as well as the alleged victim, treated Maia's obvious mental distress as a joke.

25. Other than asking Maia if she was on medication, none of the Defendant Officers made any inquiry regarding Maia's mental health, or otherwise addressed the issue.

26. Instead of providing or offering access to the mental health treatment that she obviously needed, the Defendant Officers arrested Maia and transported her to the 16th District police station, at 5151 North Milwaukee Avenue, in Chicago.

27. At the station, Maia continued to display signs of mental distress and disturbance, asking the officers, "What are you really doing? Who do you really work for?"

28. One of the Defendant Officers – on information and belief Defendant Kubon – rhetorically asked Maia, "What made you do all that stuff today? Bad day?", before locking her in her cell.

29. The City of Chicago and its police officers – including Defendant Officers – have a legal responsibility for the safety, health and well-being of persons in their custody and control.

30. During the time of Maia's arrest and detention, the Defendant Officers deprived Maia of access to mental health care, despite her obvious need for such treatment.

31. On information and belief, Maia was detained at the 16th District station until she was transferred to Bond Court at 2600 South California Avenue, where she was detained until she was released from Bond Court.

32. At no time while she was in the custody of the Chicago Police Department was Maia provided the medical and/or mental health treatment she obviously needed, nor was her obvious mental health condition addressed.

33. When she was released from 2600 S. California Avenue, Maia was still experiencing an acute psychiatric episode, and was completely unfamiliar with the surrounding area.

34. Maia ended up on the West Side of Chicago, shoeless and panicked, unsure of her surroundings, unsure of who she was, or where she belonged, and still in the throes of a psychiatric episode.

35. Maia wandered around the area until a good Samaritan, recognizing Maia's distress, contacted the police.

36. Chicago police officers arrived and immediately recognized that Maia was in emotional and/or mental distress.

37. The officers transported Maia to Loretto Hospital, where she was admitted, provided the proper mental health treatment, and stabilized.

38. Chicago Police Department Special Order S04-20, titled "Responding To Incidents Involving Persons In Need Of Mental Health Treatment", requires that officers "be aware of verbal, behavioral and environmental cues that could suggest the individual is in need of mental health treatment", including statements of false/fixed beliefs, or delusions.

39. On information and belief, at all relevant times, Chicago Police Department protocols required that arrestees in need of mental health evaluation, treatment, or hospitalization be transported to designated mental health intake facilities.

## COUNT I – 42 U.S.C. § 1983
## DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED
## DEFENDANT OFFICERS

40. Each Paragraph of this Complaint is incorporated as if restated fully herein.

41. As described above, the Defendant Officers observed Maia showing obvious signs of acute psychiatric distress, and were provided additional information that clearly demonstrated psychiatric distress.

42. The actions of the Defendant Officers, as detailed above, in which the Defendant Officers were aware of but deliberately, willfully, and wantonly ignored the obvious serious mental health needs of Maia, and purposefully neglected and failed to take appropriate steps to protect her, constitute deliberate indifference to Maia's medical needs, violating the Fourteenth Amendment to the United States Constitution.

43. As a direct and proximate cause of the aforesaid constitutional violations, Maia suffered severe pecuniary damages, including severe physical and emotional pain and suffering, and loss of normal life.

WHEREFORE, the Plaintiff, MAIA KORMAN, prays for judgment against the Defendant Officers, in a fair and reasonable amount, including compensatory damages, punitive damages, reasonable attorney's fees and costs, and for any additional relief this Court deems just and proper.

### COUNT II – 42 U.S.C. § 1983
### DENIAL OF MEDICAL CARE
### DEFENDANT OFFICERS

44. Each Paragraph of this Complaint is incorporated as if restated fully herein.

45. By ignoring Maia's obvious need for mental health treatment, Defendant Officers violated her constitutional right to medical treatment. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful deliberate indifference to Maia's constitutional rights.

46. As a direct and proximate cause of the aforesaid constitutional violations, Maia suffered severe pecuniary damages, including severe physical and emotional pain and suffering, and loss of normal life.

WHEREFORE, the Plaintiff, MAIA KORMAN, prays for judgment against the Defendant Officers, in a fair and reasonable amount, including compensatory damages, punitive damages, reasonable attorney's fees and costs, and for any additional relief this Court deems just and proper.

### COUNT III – 42 U.S.C. § 1983
### FAILURE TO INTERVENE
### DEFENDANT OFFICERS

47. Each paragraph of this Complaint is incorporated as if restated fully herein.

48. One or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Maia's constitutional rights as set forth above, but failed to do so.

49. As a result of Defendant Officers' unconstitutional failure to intervene, Maia experienced pain, suffering, emotional distress, and injury.

50. As a direct and proximate result of the Defendant Officers' acts and omissions, Maia experienced severe pecuniary damages, including severe physical and emotional pain and suffering, and loss of normal life.

WHEREFORE, the Plaintiff, MAIA KORMAN, prays for judgment against the Defendant Officers, in a fair and reasonable amount, including compensatory damages, punitive damages, reasonable attorney's fees and costs, and for any additional relief this Court deems just and proper.

### COUNT IV – INDEMNIFICATION CLAIM
### CITY OF CHICAGO

51. Each paragraph of this Complaint is incorporated as if restated fully herein.

52. Defendant CITY OF CHICAGO is the employer of the Defendant Officers.

53. The Defendant Officers committed the acts alleged above under color of law and in the scope of their employment as employees of the CITY OF CHICAGO.

54. Illinois law provides that governmental entities are directed to pay any tort judgment for any damages for which employees are liable within the scope of their employment activities.

WHEREFORE, should the Defendant Officers be found liable on one or more of the claims set forth above, the Plaintiff, MAIA KORMAN, demands that, pursuant to Illinois law, the Defendant CITY OF CHICAGO be found liable for any judgment plaintiff obtains against said defendants, as well as attorney's fees and costs awarded, and for any additional relief this Court deems just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: March 26, 2020

        Respectfully submitted,

        MAIA KORMAN

By: **/s/ Jordan Marsh**
Attorney for Plaintiff

**Law Office of Jordan Marsh**
55 East Monroe Street, Suite 3800
Chicago, IL 60603
(312) 401-5510
jordan@jmarshlaw.com